UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LARISSA WILLIAMS, Individually and for Others Similarly Situated,<br><br>v.<br><br>DICKEY'S BARBEQUE RESTAURANTS, INC. | Case No.<br><br>**Jury Trial Demanded**<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

## Summary

1. Larissa Williams ("Williams") brings this class and collective action to recover unpaid wages and other damages from Dickey's Barbeque Restaurants, Inc. ("Dickey's BBQ").

2. Dickey's BBQ employed Williams as one of its Hourly Employees (defined below) in Riverside, California.

3. Williams worked for Dickey's BBQ as a cashier.

4. Dickey's BBQ paid Williams on an hourly rate basis. Dickey's BBQ's customers also commonly leave tips/gratuities for Williams and the other Hourly Employees at Dickey's BBQ restaurants.

5. Dickey's BBQ, however, kept a portion of the tips/gratuities which customers left for Williams and the other Hourly Employees in violation of the Fair Labor Standards Act ("FLSA"), namely 29 U.S.C. § 203(m)(2)(B), and California state wage-and-hour laws (Dickey's BBQ's "Tip-Retention Policy").

6. These tip/gratuity payments constitute monetary property rightfully belonging to Williams and the other Hourly Employees under the FLSA and California wage laws.

7. Further, like the other Hourly Employees, Williams regularly worked more than 8 hours in a workday and 40 hours in a week.

8. But Dickey's BBQ did not pay Williams and the other Hourly Employees for all overtime hours worked at the correct overtime rates of pay.

9. Dickey's BBQ instituted a common policy or practice of requiring Williams and the other Hourly Employees to perform compensable work prior to clocking-in for their opening shifts and after clocking-out for their closing shifts (Dickey's BBQ's "Opening/Closing Shift Policy").

10. Namely, Dickey's BBQ requires workers like Williams and the other Hourly Employees to perform various mandatory and principal job duties before they can physically clock in for work when they work an "opening shift," including unlocking the restaurant door, disarming the alarm system, turning on the point-of-sale system/computer which they use to clock in, waiting for the software systems to load, and then, finally, being allowed to clock-in.

11. Similarly, Dickey's BBQ requires workers like Williams and the other Hourly Employees to perform various mandatory and principal job duties after they clock out for work during a "closing shift," including turning off the lights, arming the security system, and locking the doors.

12. These increments of time are readily calculable using time-stamped security system data as compared with Williams's and the other Hourly Employees' clock-in and clock-out data.

13. The time is therefore not "de minimis" because Dickey's BBQ is able to measure the amount of time at issue through a review of its own business records and time-stamped electronic data.

14. Despite knowing these workers must, as a necessary part of their jobs, perform such work-related tasks, Dickey's BBQ does not pay Williams and the other Hourly Employees for this compensable work.

15. Further, Dickey's BBQ fails to authorize, permit, and/or make available timely and compliant meal periods to Williams and the California Class Members, as required under the California Labor Code and applicable IWC Wage Order(s).

16. But Williams and the California Class Members did not actually receive *bona fide* meal breaks pursuant to California law.

17. Instead, Dickey's BBQ required Williams and the other California Class Members to remain on-duty and perform compensable work throughout their shifts, failed to relieve them of work duties, and Dickey's BBQ continuously subjected them to work interruptions during their "meal breaks."

18. Indeed, Dickey's BBQ often required Williams and the other California Class Members to skip their unpaid meal periods altogether or otherwise cut their "breaks" short, without compensating Williams and the other Hourly Employees with statutorily-required premium pay for such work time (Dickey's BBQ's "Meal Break Policy").

19. Dickey's BBQ likewise required Williams and the other California Class Members to remain on-duty and perform compensable work throughout their shifts, including during their statutorily-required 10-minute rest periods (Dickey's BBQ's "Rest Period Policy").

20. Dickey's BBQ did not pay premium wages owed to Williams and the California Class Members for each workday in which they did not receive a timely or compliant meal and rest period, in violation of California law.

21. Dickey's BBQ also required and mandated Williams and the California Class Members to incur various necessary business expenditures, namely to purchase their own uniforms, but did not reimburse Williams and the California Class Members for such work-related expenses in violation of the California Labor Code and applicable IWC Wage Order(s) (Dickey's BBQ's "Uniform Expense Policy").

22. Dickey's BBQ's Tip-Retention Policy and Opening/Closing Shift Policy violates the Fair Labor Standards Act ("FLSA") and the California Labor Code by depriving Williams and the other Hourly Employees of earned tips and overtime wages for all overtime hours worked.

23. Dickey's BBQ's Tip-Retention Policy, Opening/Closing Shift Policy, Meal Break Policy, Rest Period Policy, and Uniform Expense Policy likewise violates the California Labor Code by depriving Williams and the California Class Members of all wages owed, including straight time wages, overtime wages, and premium pay.

24. By failing to pay Williams and the California Class Members all wages owed, all tips/gratuity payments earned, including straight time wages, overtime wages, and premium pay, Dickey's BBQ likewise issues itemized pay statements to Williams and the California Class Members that do not comply with the statutory requirements found in California Labor Code § 226.

25. Similarly, Dickey's BBQ fails to pay Williams and those California Class Members that left their employment with Dickey's BBQ all wages owed upon separation of employment, in violation of California Labor Code §§ 201-203.

26. Dickey's BBQ's failure to pay all wages owed upon separation of employment subjects these workers to waiting time penalties under the California Labor Code.

## Jurisdiction & Venue

27. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

28. This Court also has supplemental jurisdiction over the state-law class action claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

29. This Court has general personal jurisdiction over Dickey's BBQ because Dickey's BBQ is a domestic corporation with its principal place of business in Plano, Texas.

30. Venue is proper because Dickey's BBQ's principal place of business is in Plano, Collin County, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

31. Williams worked for Dickey's BBQ as a cashier in Riverside, California from approximately May 2023 to April 2024.

32. Throughout her employment, Dickey's BBQ classified Williams as non-exempt and paid her on an hourly basis.

33. Throughout her employment, Dickey's BBQ subjected Williams to its Tip-Retention Policy, in which customers would leave tips/gratuities for Williams and other restaurant workers on their credit/debit card purchases but Dickey's BBQ would retain a portion of the tips/gratuities for itself rather than disbursing such monies to the tip-earning employees.

34. Throughout her employment, Dickey's BBQ subjected Williams to its Opening/Closing Shift Policy, in which Dickey's BBQ required her to perform compensable work before she could clock in for work during opening shifts and to perform compensable work after she clocked out during closing shifts, but failed to pay her for such compensable work time.

35. Throughout her employment, Dickey's BBQ subjected Williams to its Meal Break Policy, in which Williams was required to remain on-duty and subject to interruption during her meal periods, or otherwise to cut short or skip entirely such meal periods.

36. Throughout her employment, Dickey's BBQ subjected Williams to its Rest Period Policy, in which Williams did not receive timely and compliant rest periods.

37. But throughout her employment, Williams did not actually receive *bona fide* meal and rest breaks each workday.

38. Likewise, throughout her employment, Dickey's BBQ subjected Williams to its Uniform Expense Policy, in which Dickey's BBQ required Williams to wear a specific uniform to work in Dickey's BBQ restaurant, pay for such uniform with her own money, and did not reimburse Williams as required under California Labor Code § 2802.

39. Dickey's BBQ required Williams to purchase her uniform using her own money.

40. Dickey's BBQ, however, did not reimburse Williams for this necessary business expenditure.

41. Similarly, upon information and belief, Dickey's BBQ required California Class Members to purchase their uniforms using their own money.

42. However, Dickey's BBQ did not reimburse the California Class Members for each of these necessary business expenditures in violation of California Labor Code § 2802.

43. Williams brings this class and collective action on behalf of herself and other similarly situated hourly, non-exempt employees of Dickey's BBQ who were subject to the aforementioned policies and practices.

44. Dickey's BBQ improperly retains tips and/or gratuity payments left by customers for these non-exempt employees.

45. Dickey's BBQ requires its non-exempt employees to suffer unpaid, but compensable, work time when they work opening or closing shifts.

46. Thus, Dickey's BBQ uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

47. Likewise, Dickey's BBQ uniformly deprives these employees of straight time wages, overtime wages, premium pay, and other penalties under the California Labor Code.

48. The FLSA Collective of similarly situated employees is defined as:

> **All current and former hourly, non-exempt employees of Dickey's BBQ in the United States who were subject to Dickey's BBQ's Tip-Retention and/or Opening/Closing Shift Policy at any time from 3 years prior to the filing of this Complaint through final resolution of this Action ("FLSA Collective Members").**

49. Williams also seeks to represent a class under Fed. R. Civ. P. 23 for the California state-law claims asserted herein.

50. The Rule 23 class of similarly situated employees is defined as:

> **All current and former hourly, non-exempt railroad employees of Dickey's BBQ in California who were subject to Dickey's BBQ's (i) Tip-Retention Policy; (ii) Opening/Closing Shift Policy; (iii) Meal Break Policy; (iv) Rest Period Policy; and/or (v) Uniform Expense Policy at any time from 4 years prior to the filing of this Complaint through final resolution of this Action ("California Class Members").**

51. The FLSA Collective Members and the California Class Members are collectively referred to as the "Hourly Employees."

52. Dickey's BBQ is a Texas corporation that maintains its principal place of business in Plano, Texas.

53. Dickey's BBQ may be served with process through its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

## Employment Allegations

54. Dickey's BBQ was Williams's and the California Class members' employers or persons acting on behalf of their employer(s), within the meaning of California Labor Code § 558, who violated or caused to be violated, a section of Part 2, Chapter 1 of the California Labor Code or any provision regulating hours and days of work in any IWC Wage Order.

55. Dickey's BBQ is Williams's and the California Class Members' employer or persons acting on behalf of their employer(s) either individually or as an officer, agent, or employee(s) of another person, within the meaning of California Labor Code § 1197.1, who paid or caused to be paid any employee a substandard wage under California state law.

56. Dickey's BBQ is considered an "employer" under California law because it exercises control over the wages, hours, or working conditions of Williams and the other California Class Members.

57. Dickey's BBQ is responsible for paying Williams and other California Class Members' wages.

58. Dickey's BBQ is responsible for setting work rules, safety rules, time and attendance policies, and the other Meal Break, Rest Period, and Uniform Expense Policies discussed herein as applicable to Williams and the other Hourly Employees.

59. Upon information and belief, Dickey's BBQ implements and enforces the various work policies applicable to Williams and the other Hourly Employees through franchise agreements.

60. Dickey's BBQ employs individuals who manage and supervise the work being performed by Williams and the Hourly Employees.

61. Dickey's BBQ enlists other individuals and entities to run its franchises.

62. Dickey's BBQ, however, places strict operating procedures on these franchise restaurants.

63. For example, Dickey's BBQ develops and implements manuals and business models which the franchisees are required to follow pursuant to their franchise agreements--Dickey's BBQ retains the right to make changes to these manuals and business models without the franchisees' consent.

64. Dickey's BBQ places operating restrictions on the franchisees, including controlling where they can operate a Dickey's BBQ restaurant, the franchisees' access to customers, what the franchisees are allowed to sell, how the franchisees advertise and/or conduct marketing, and the restaurants' hours of operation.

65. As such, Dickey's BBQ controls and manages Williams's and the other Hourly Employees' hours of work.

66. Dickey's BBQ likewise controls and dictates Williams's and the other Hourly Employees' conditions of work in various ways.

67. Dickey's BBQ requires its franchisees to undergo a specific training program which the franchisees and at least two restaurant managers are required to complete before they can begin managing a Dickey's BBQ's restaurant.

68. Dickey's BBQ's training program is meant to ensure the franchisees and the managerial employees at these restaurants run and operate the Dickey's BBQ restaurant consistent with Dickey's BBQ's rules, guidelines, and specifications.

69. Some of these guidelines include, but are not limited to, food safety classes to ensure workers like Williams and the Hourly Employees can adhere to food safety requirements an standards in the normal course of their jobs.

70. Dickey's BBQ requires its franchisees to incorporate and implement specific standards and policies at the restaurants where Williams and the other Hourly Employees work.

71. Dickey's BBQ further requires its franchisees to use an accounting firm approved of by Dickey's BBQ to provide comprehensive accounting services at the restaurants where Williams and the other Hourly Employees work.

72. Dickey's BBQ requires its franchisees to obtain and maintain certain insurance coverage, including workers' compensation insurance and employment practices liability coverage, solely from insurance agents/brokers or other providers approved by Dickey's BBQ.

73. Upon information and belief, Dickey's BBQ maintains payroll and personnel records for Williams and the Hourly Employees or, at the very least, has ready access to such personnel records.

74. Dickey's BBQ mandates that its franchisees maintain payroll records, check stubs, and other personnel records in accordance with Dickey's BBQ's operations manuals and guidelines.

75. Dickey's BBQ further requires franchisees to use and install required business software, restaurant operating software, hardware, and point-of-sale systems which are approved by Dickey's BBQ.

76. Williams and the other Hourly Employees are required to use the software, restaurant operating software, hardware, and point-of-sales systems mandated by Dickey's BBQ to do their jobs.

77. Dickey's BBQ also may require franchisees to use certain back office, on-line ordering, and other hardware and software in the operation of the restaurants, which further affect and impact Williams's and the Hourly Employees' conditions of work.

78. Upon information and belief, Dickey's BBQ is responsible for creating, developing, and implementing the Meal Break, Rest Period, and Uniform Expense Policies applicable to Williams and the other Hourly Employees.

79. Upon information and belief Dickey's BBQ is responsible for creating, developing, and implementing other work, health, and safety rules which Williams and the other Hourly Employees are required to follow.

80. Upon information and belief, Dickey's BBQ is responsible for hiring managerial and supervisory employees who oversee the work being performed by Williams and the other Hourly Employees, or otherwise oversee the work performed by their direct supervisors, at Dickey's BBQ's restaurants.

81. As a result, Dickey's BBQ is liable for compliance with all of the applicable provisions of the FLSA and California state law, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

## FLSA Coverage

82. At all relevant times, Dickey's BBQ was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

83. At all relevant times, Dickey's BBQ was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

84. At all relevant times, Dickey's BBQ BQ was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Dickey's BBQ, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as restaurant supplies, food items, maintenance equipment, computers, tools, and cleaning supplies—that have been moved in or produced for commerce.

85. At all relevant times, Dickey's BBQ has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

86. At all relevant times, Williams and the other Hourly Employees were Dickey's BBQ's covered "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

87. At all relevant times, Williams and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

88. Dickey's BBQ uniformly subjected Williams and the other Hourly Employees to its Tip-Retention Policy, wherein Dickey's BBQ kept all of tips/gratuities customers left using their credit or debit card purchases for Williams and the other Hourly Employees.

89. Dickey's BBQ's Tip-Retention Policy, therefore, violates the FLSA by depriving Williams and the other Hourly Employees of earned tips/gratuities. 29 U.S.C. § 203(m)(2)(B).

90. Dickey's BBQ uniformly subjected Williams and the other Hourly Employees to its Opening/Closing Shift Policy, wherein when Williams and the other Hourly Employees worked an opening shift they were required to perform compensable work before they could clock in for work, including unlocking the doors to the establishment, disarming the security system, turning on the point-of-sale system and other computers, and waiting for the software to load, all before they were allowed to clock-in for work. Despite requiring such pre-shift work, Dickey's BBQ did not pay Williams and the other Hourly Employees for this compensable and quantifiable work time.

91. Similarly, when Williams and the other Hourly Employees worked a closing shift they were required to perform compensable work after they clocked out in for work, including ensuring all equipment was turned off, arming the security system, and locking the doors. Despite requiring such post-shift work, Dickey's BBQ did not pay Williams and the other Hourly Employees for this compensable and quantifiable work time.

92. As a result, Dickey's BBQ failed to pay Williams and the other Hourly Employees wages (including overtime) for the compensable work they performed during their opening and/or closing work duties.

93. Dickey's BBQ's Opening/Closing Shift Policy, therefore, violates the FLSA by depriving Williams and the other Hourly Employees of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## Facts

94. Dickey's BBQ operates, manages, and oversees a chain of slow-smoked barbeque restaurants throughout the United States.

95. Dickey's BBQ "has grown to 866 locations spanning eight unique concepts in 44 states and around the globe."[1]

96. To meet its business objectives, Dickey's BBQ hires workers, like Williams and the other Hourly Employees, to work in its restaurants throughout the country.

97. Dickey's BBQ uniformly classifies these employees (including Williams and the other Hourly Employees) as non-exempt and pays them on an hourly basis.

98. For example, Williams worked for Dickey's BBQ as a cashier May 2023 to April 2024.

99. Williams's primary job duties included interacting with restaurant customers, taking orders utilizing Dickey's BBQ's point-of-sale system, cleaning, and organizing supplies.

100. Many of the Hourly Employees, including Williams, were required to work opening and/or closing shifts.

101. For an opening shift, Williams and the Hourly Employees were required to unlock the doors to the restaurant, disarm the security system, turn on the point-of-sale system and other

[1] https://www.dickeys.com/company/our-story (last visited Aug. 28, 2025).

computers, open the software applications on the point-of-sale system, including the timekeeping software, an wait for such software to load, all before they could clock-in for their shifts.

102. These opening shift duties, on average, last 3-to-4 minutes in length, if not longer.

103. For a closing shift, Williams and the Hourly Employees were required to clock-out, ensure all equipment was off, arm the security system, and lock the doors to the restaurant.

104. These closing shift duties, on average, last 2-to-3 minutes in length.

105. Williams's and the other Hourly Employees' opening and closing shift job duties are part of their principal job duties.

106. These work-related opening and closing activities are integral and indispensable to Williams's and the other Hourly Employees' principal activities as non-exempt restaurant workers.

107. Williams and the other Hourly Employees cannot perform their regular restaurant worker job duties without the closing shift duties—it would leave the restaurant in unsafe and unsecure if the closing duties are not completed.

108. If Williams and the other Hourly Employees do not complete their opening shift duties, they cannot perform the remainder of their restaurant work—they would lack access to the premises and equipment needed to do their jobs.

109. This unpaid time is compensable under the FLSA (and California Labor Code as to the California Class Members) because Dickey's BBQ knew, or should have known: (1) Williams and the other Hourly Employees were performing unpaid work during their opening and closing shifts while off-the-clock; and/or (2) they were directly instructed by their supervisors to perform such work for Dickey's BBQ's benefit.

110. Dickey's BBQ fails to exercise its duty as Williams's and the other Hourly Employees' employer to ensure these employees are not performing work that Dickey's BBQ does not want performed while off-the-clock during these opening and/or closing shifts.

111. And Dickey's BBQ knows, should know, or recklessly disregards whether Williams and the other Hourly Employees routinely perform work "off the clock" during their opening and/or closing shifts because Dickey's BBQ expects and requires these employees to do so.

112. Thus, Dickey's BBQ requested, suffered, permitted, or allowed Williams and its other Hourly Employees to work while off-the-clock during these opening and/or closing shifts.

113. Despite accepting the benefits, Dickey's BBQ does not pay Williams and the other Hourly Employees for the compensable pre- and post-shift off-the-clock work they perform during opening and/or closing shifts.

114. Thus, under Dickey's BBQ's uniform Opening/Closing Shift Policy, Williams and the other Hourly Employees are denied overtime pay for the pre- and post-shift off-the-clock work performed during workweeks in which they work more than 40 hours in violation of the FLSA and California Labor Code.

115. Likewise, under Dickey's BBQ's uniform Meal Break Policy, Williams and the California Class Members are denied overtime pay for the off-the-clock work performed during workday in which they work more than 8 hours in violation of the California Labor Code.

116. Likewise, under Dickey's BBQ's uniform Opening/Closing Shift Policy, Williams and the California Class Members are denied straight time pay for the pre- and post-shift off-the-clock work performed during workweeks in which they work less than 8 hours in a day or 40 hours in a week in violation of the California Labor Code.

117. Williams was Dickey's BBQ's hourly employee.

118. Dickey's BBQ paid, or caused to be paid, Williams at a rate of approximately $15.50-to-$16.00 per hour. Williams was also eligible to earn tips/gratuities from customers.

119. Williams's primary job duties as a cashier were to interact with Dickey's BBQ customers, ring up orders using the point-of-sale system, cleaning, and organizing supplies. Williams would also work opening and/or closing shifts.

120. The other Hourly Employees' job duties similarly include working in a barbeque restaurant, cleaning, organizing, and assisting Dickey's BBQ's customers. Additionally, many of the Hourly Employees perform opening and/or closing shift duties.

121. While exact job titles and precise job duties may differ, Williams and the other Hourly Employees are all subject to Dickey's BBQ's same or similar illegal practices— Dickey's BBQ's Tip-Retention Policy, Opening/Closing Shift Policy, Meal Break, Rest Period, and Uniform Expense Policies—for similar work.

122. Dickey's BBQ requires Williams and the California Class Members to purchase their mandated work uniforms using their own money.

123. Dickey's BBQ, however, does not reimburse Williams and the California Class Members for these required and necessary business expenditures.

124. When customers make a purchase at Dickey's BBQ using their credit or debit card, Dickey's BBQ leave a space where customers can elect to leave a tip for non-exempt restaurant workers like Williams and the Hourly Employees.







125. In accordance with normal customs in the restaurant industry, customers routinely leave tips for the benefit of Williams and the Hourly Employees when they make purchases on their credit/debit cards. These tips are commonly between 15%-to-20%, or greater, of the amount charged.

126. Throughout her employment, Dickey's BBQ retained a substantial potion of the tips/gratuities for itself that its customers left for Williams when the customers used their credit/debit cards.

127. Similarly, Dickey's BBQ retained a substantial portion of the tips/gratuities for itself that its customers left for the other Hourly Employees when the customers used their credit/debit cards.

128. That is, when customers make purchases on their credit or debit cards and elect to leave a tip for workers like Williams and the Hourly Employees, Dickey's BBQ does not remit all of those tips/gratuities to the workers and, instead, retains tip monies for itself.

129. Throughout her employment, Dickey's BBQ also subjected Williams to its common Meal Break Policy.

130. Throughout her employment, Williams did not actually receive *bona fide* meal breaks within the first 5 hours of work.

131. Instead, Dickey's BBQ required Williams to continue working through her meal periods, cut her meal periods short (often less than 20 minutes in length), or skip her meal periods entirely.

132. Even if Williams and the other California Class Members attempt to grab a bite to eat during their shifts, these "breaks" frequently lasted less than 30 full minutes and, upon information and belief, would regularly last 20 minutes or less.

133. Williams and the other Hourly Employees are regularly interrupted during their unpaid meal periods with questions from their co-workers during their attempted breaks.

134. In a busy restaurant environment, backed-up schedules and time-sensitive issues arise on a regular basis, including during Williams's and the Hourly Employees' attempted meal breaks.

135. Because of these constant work interruptions, Williams and the other Hourly Employees are not free to engage in personal activities during their unpaid "meal breaks."

136. In other words, Williams and the other Hourly Employees are not relieved of all their work duties during their unpaid "meal breaks."

137. Thus, Williams and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for Dickey's BBQ's—not their own—predominant benefit.

138. Despite not receiving timely or *bona fide* 30-minute meal periods each workday, Dickey's BBQ failed to pay premium pay to Williams and the California Class Members for each day Dickey's BBQ denied them a compliant meal period in violation of California law.

139. Throughout her employment, Dickey's BBQ also subjected Williams to its common Rest Period Policy.

140. The other Hourly Employees likewise do not receive *bona fide* meal periods of at least 10 minutes for each 4 hours of work.

141. Dickey's BBQ makes no effort to provide or otherwise ensure Williams or the California Class Members receive their statutory 10-minute rest periods for each 4 hours of work.

142. Williams likewise did not receive *bona fide* 10-minute rest periods for each 4 hours of work.

143. The other California Class Members likewise did not receive *bona fide* 10-minute rest periods for each 4 hours of work.

144. Dickey's BBQ knows, or with the exercise of reasonable diligence would know, that Williams and the other Hourly Employees do not receive *bona fide* meal and rest periods in which they are fully relieved of all work duties.

145. Among other things, including direct observation from Dickey's BBQ's managerial and supervisory employees witnessing Williams and the other Hourly Employees remaining on-duty during their so-called meal and rest periods, point-of-sale system computer activity logs and other timekeeping records, would demonstrate these workers did not receive fully-relieved 30-minute meal periods or 10-minute rest periods each workday.

146. Despite not receiving *bona fide* 30-minute meal periods and/or 10-minute rest periods each workday, Dickey's BBQ failed to pay premium pay to Williams and the California Class Members for each day Dickey's BBQ denied them a compliant meal or rest period in violation of California law.

147. Williams and the other Hourly Employees perform their jobs under Dickey's BBQ's supervision and use materials, equipment, and technology Dickey's BBQ approves and supplies.

148. Dickey's BBQ requires Williams and its other Hourly Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

149. At the end of each pay period, Williams and the other Hourly Employees receive wages from Dickey's BBQ, or otherwise which Dickey's BBQ causes to be paid, that are determined by common systems and methods that Dickey's BBQ selects and controls.

150. Dickey's BBQ requires Williams and its other Hourly Employees to record their hours worked using Dickey's BBQ's uniform timeclock system.

151. Williams worked more than 40 hours in at least one week during the three years before this Complaint was filed.

152. Williams likewise worked more than 8 hours in a day and/or 40 hours in a week during the four years before this Complaint was filed.

153. Likewise, upon information and belief, each Hourly Employee worked more than 40 hours in at least one week during the three years before this Complaint was filed.

154. Indeed, Williams and the other Hourly Employees typically worked 8-to-9 hour shifts for 5-to-6 days a week (or 40-to-54 hours a week) throughout the relevant period.

155. For instance, in November 2023 through April 2024, Williams consistently worked 45-to-55 hours per week on average.

156. Further, Williams worked more than 8 hours in a day at least once during her January 12, 2024 pay period, in which she incurred on-the-clock overtime hours.

157. And Williams and the other Hourly Employees were also regularly required to work "off the clock" pre-shift to perform their principal opening store duties and responsibilities for Dickey's BBQ's predominate benefit.

158. Likewise, Williams and the other Hourly Employees were also regularly required to work "off the clock" post-shift to perform their principal closing store duties and responsibilities for Dickey's BBQ's predominate benefit.

159. As a result, Williams and the other Hourly Employees routinely worked more than 40 hours in a week throughout the relevant period.

160. Similarly, Williams and the California Class Members routinely worked more than 8 hours in a typical workday and/or 40 hours in a typical week throughout the relevant period.

161. When Williams and the other Hourly Employees worked more than 40 hours in a week, Dickey's BBQ did not pay them overtime wages for all overtime hours worked because

Dickey's BBQ (1) failed to include time these employees worked "off the clock" during their pre-shift opening duties in their total number of hours worked in a given week; and (2) failed to include time these employees worked "off the clock" during their post-shift closing duties in their total number of hours worked in a given week.

162. When Williams and the California Class Members worked more than 8 hours in a day and/or 40 hours in a week, Dickey's BBQ did not pay them overtime wages for all overtime hours worked because Dickey's BBQ (1) failed to include time these employees worked "off the clock" during their pre-shift opening duties in their total number of hours worked in a given week; and (2) failed to include time these employees worked "off the clock" during their post-shift closing duties in their total number of hours worked in a given week.

163. Dickey's BBQ likewise did not pay Williams and the California Class Members all straight time wages for all non-overtime hours worked because Dickey's BBQ (1) failed to include time these employees worked "off the clock" during their pre-shift opening duties in their total number of hours worked in a given week; and (2) failed to include time these employees worked "off the clock" during their post-shift closing duties in their total number of hours worked in a given week.

164. Likewise, as a result of Dickey's BBQ's failure to pay all wages owed, including overtime wages and premium wages, to Williams and the California Class Members, Dickey's BBQ necessarily failed to pay all wages owed upon separation of Williams's employment as well as those California Class Members who left their employment.

165. Dickey's BBQ's failure to pay all wages owed, failure to track all time worked, and improper meal and rest period practices results in Williams and the California Class Members receiving itemized wage statements that do not comply with California Labor Code § 226.

166. Specifically, Dickey's BBQ fails to provide Williams and the California Class Members with itemized wage statements that accurately reflect her hours worked, overtime wages earned, straight time wages earned, premium pay earned, gross wages, or net wages in violation of California law.

167. Dickey's BBQ's violations of the FLSA and California Labor Code serve as predicate acts supporting an unfair competition law ("UCL") claim as to Williams and the California Class Members pursuant to California Business and Professions Code §§ 17200, *et seq.*

## Class & Collective Action Allegations

168. Williams incorporates all other paragraphs by reference.

169. Like Williams and the other Hourly Employees were uniformly victimized by Dickey's BBQ's Tip-Retention Policies, Opening/Closing Shift Policies, Meal Break Policies, Rest Period Policies, Uniform Expense Policies.

170. Other Hourly Employees worked with Williams and indicated they were paid in the same manner, performed similar work, and were subject to Dickey's BBQ's same illegal policies as alleged herein.

171. Based on her experience with Dickey's BBQ, Williams is aware Dickey's BBQ's illegal Tip-Retention Policies, Opening/Closing Shift Policies, Meal Break Policies, Rest Period Policies, Uniform Expense Policies were imposed on the other Hourly Employees.

172. The Hourly Employees are similarly situated in the most relevant respects.

173. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a week and, as to the California Class Members, all hours worked over 8 in a workday.

174. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

175. Rather, the class and collective are held together by Dickey's BBQ's policies, which systematically deprived Williams and the other Hourly Employees of earned tips/gratuities, as well as earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek (or 8 in a workday for California Class Members).

176. Dickey's BBQ's retention of tips/gratuities and its failure to pay earned wages and overtime wages as required by the FLSA and California wage laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Employees.

177. Dickey's BBQ's records reflect the number of hours the Hourly Employees recorded they worked each week.

178. Dickey's BBQ's records reflect the tips/gratuities which patrons leave on their credit/debit card purchases for the benefit of the Hourly Employees.

179. Dickey's BBQ's records reflect the wages and other compensation paid to the Hourly Employees.

180. Dickey's BBQ's records also show that Hourly Employees were required to arrive to work early and complete their opening shift duties before they could clock in.

181. Dickey's BBQ's records also show that Hourly Employees were required to clock out and complete various work tasks related to their closing shift duties.

182. Dickey's BBQ has, or upon reasonable diligent would have, access to the security records showing the precise times that Hourly Employees arm and disarm the restaurant security systems each workday.

183. Likewise, Dickey's BBQ's records show the specific time the Hourly Employees clocked in and out for their shifts.

184. The back wages owed to Williams and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

185. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Dickey's BBQ's records, and there is no detraction from the common nucleus of liability facts.

186. Therefore, the issue of damages does not preclude class or collective treatment.

187. Williams's experiences are therefore typical of the experiences of the other Hourly Employees.

188. Williams has no interest contrary to, or in conflict with, the other Hourly Employees.

189. Like each Hourly Employee, Williams has an interest in obtaining the unpaid wages and tips/gratuities owed to them under federal and California law.

190. Williams and her counsel will fairly and adequately protect the interests of the other Hourly Employees.

191. Williams retained counsel with significant experience in complex class and collective action litigation.

192. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

193. Absent this class and collective action, many Hourly Employees likely will not obtain redress for their injuries, and Dickey's BBQ will reap the unjust benefits of violating the FLSA and California wage laws.

194. Further, even if some of the Hourly Employees could afford individual litigation against Dickey's BBQ, it would be unduly burdensome to the judicial system.

195. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Dickey's BBQ.

196. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

197. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

198. Among the common questions of law and fact are:

a. Whether Dickey's BBQ retained any of the tips/gratuity payments customers left for non-exempt workers like the Hourly Employees;

b. Whether Dickey's BBQ failed to disburse all tips/gratuity payments to the Hourly Employees;

c. Whether Dickey's BBQ required Hourly Employees to perform opening shift duties before they clocked-in for work, including

unlocking the doors, disarming the security system, and turning on/loading the point-of-sale software systems;

d. Whether the Hourly Employees were, in fact, paid for all of these opening shift work duties;

e. Whether Dickey's BBQ required Hourly Employees to perform closing shift duties after they clocked-out for work, including arming the security system and locking the doors;

f. Whether the Hourly Employees were, in fact, paid for all of these closing shift work duties;

g. Whether Dickey's BBQ engaged in a policy and practice of failing to provide timely and compliant 30-minute meal periods to the California Class Members in violation of California wage laws;

h. Whether Dickey's BBQ engaged in a policy and practice of failing to provide timely and compliant 10-minute rest periods for each 4 hours of work to the California Class Members in violation of California wage laws;

i. Whether Dickey's BBQ failed to pay premium payments at a rate of 1 hour multiplied by the workers' regular rate of pay for each workday in which the California Class Members did not receive a timely and compliant meal period in violation of California wage laws;

j. Whether Dickey's BBQ failed to pay premium payments at a rate of 1 hour multiplied by the workers' regular rate of pay for each workday in which the California Class Members did not receive a timely and compliant 10-minute rest period in violation of California wage laws;

k. Whether Dickey's BBQ required the California Class Members to purchase their own work uniforms;

l. Whether Dickey's BBQ reimbursed the California Class Members for the cost of purchasing their own uniforms;

m. Whether Dickey's BBQ knew, or had reason to know, the Hourly Employees were requested, suffered, permitted, or allowed to work "off the clock" during their opening or closing shift duties in violation of the FLSA and California wage laws;

n. Whether the itemized wage statements provided by Dickey's BBQ to the California Class Members are compliant and accurate as to reflecting all hours worked and all wages owed;

o. Whether Dickey's BBQ failed to pay the Hourly Employees overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock," in violation of the FLSA and California wage laws;

p. Whether Dickey's BBQ failed to pay California Class Members overtime wages for all hours worked after 8 in a workday, including

those hours worked "off the clock," in violation of the California wage laws;

q. Whether Dickey's BBQ failed to pay California Class Members all straight time wages worked for all non-overtime hours, including those hours worked "off the clock," in violation of the California wage laws;

r. Whether Dickey's BBQ failed to timely pay all wages owed to those California Class Members who left their employment upon their separation from employment with Dickey's BBQ;

s. Whether Dickey's BBQ's decision to withhold earned wages and/or tips/gratuities from the Hourly Employees was made in good faith;

t. Whether Dickey's BBQ's decision not to pay the Hourly Employees overtime wages for all overtime hours worked as made in good faith;

u. Whether Dickey's BBQ's decision to withhold earned wages from the Hourly Employees was the result of a *bona fide* dispute; and

v. Whether Dickey's BBQ'S violations were willful.

199. Williams knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

200. As part of its regular business practices, Dickey's BBQ intentionally, willfully, and repeatedly violated the FLSA and California wage laws with respect to Williams and the other Hourly Employees.

201. Dickey's BBQ's illegal Tip-Retention Policies, Opening/Closing Shift Policies, Meal Break Policies, Rest Period Policies, Uniform Expense Policies deprived Williams and the other Hourly Employees of earned tips, wages for all hours worked, and overtime wages for all overtime hours worked, which they are owed under federal and California law.

202. Dickey's BBQ's conduct has also deprived Williams and the California Class Members of all premium wages owed, waiting time penalties, and other statutory penalties they are owed under California law.

203. There are many similarly situated Hourly Employees who have been denied tips/gratuities and/or overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

204. The Hourly Employees are known to Dickey's BBQ and can readily identified through Dickey's BBQ business and personnel records.

## Dickey's BBQ's Violations Were Willful and/or Done in Reckless Disregard of the FLSA and California Wage Laws

205. Williams incorporates all other paragraphs by reference.

206. Dickey's BBQ knew it was subject to the FLSA's and California Labor Code's respective wage-and-hour provisions.

207. Dickey's BBQ knew it was subject to the California Labor Code's and IWC Wage Order(s)'s wage-and-hour provisions.

208. Dickey's BBQ knew the FLSA and California Labor Code required it to remit all tips and/or gratuities to its tip-earning employees, such as Williams and the Hourly Employees.

209. Dickey's BBQ knew the FLSA and California Labor Code (as well as applicable IWC Wage Order(s)) required it to pay employees, including Williams and the other Hourly

Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

210. Dickey's BBQ knew the California Labor Code and applicable IWC Wage Order(s)required it to pay employees, including Williams and the California Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 8 in a workday and/or 40 in a workweek.

211. Dickey's BBQ knew the California Labor Code and applicable IWC Wage Order(s)required it to pay employees, including Williams and the California Class Members, all straight time wages owed for hours worked under 8 hours in a workday and/or 40 hours in a workweek.

212. Dickey's BBQ knew the California Labor Code and applicable IWC Wage Order(s) required it to provide *bona fide*, fully off-duty meal and rest periods at prescribed times to its employees, including Williams and the California Class Members.

213. Dickey's BBQ knew the California Labor Code and applicable IWC Wage Order(s) required it to pay premium payments to its employees for each workday in which they do not receive a timely and compliant meal period.

214. Dickey's BBQ knew the California Labor Code and applicable IWC Wage Order(s) required it to pay premium payments to its employees for each workday in which they do not receive a timely and compliant rest period.

215. Dickey's BBQ knew Williams and the Hourly Employees were non-exempt employees entitled to overtime pay.

216. Dickey's BBQ knew it paid Williams and the Hourly Employees on an hourly basis.

217. Dickey's BBQ knew Williams and the Hourly Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Dickey's BBQ required these employees to record their hours worked using its timeclock system.

218. Dickey's BBQ knew Williams and the California Class Members worked over 8 hours in at least workday and/or over 40 hours in at least one workweek during the four years before this Complaint was filed because Dickey's BBQ required these employees to record their hours worked using its timeclock system.

219. Dickey's BBQ knew the California Labor Code requires all employers to reimburse all necessary business expenditures incurred by its employees.

220. Dickey's BBQ required and/or mandated its non-exempt employees like Williams and the Hourly Employees to wear uniforms to work.

221. Dickey's BBQ knew, or should have known, that Williams and the Hourly Employees were required to pay for their own uniforms.

222. Dickey's BBQ knew the FLSA, California Labor Code, and applicable IWC Wage Order(s) required it to pay employees, including Williams and the other Hourly Employees, for all hours these employees performed compensable work.

223. Dickey's BBQ knew that, as Williams's and the other Hourly Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Dickey's BBQ did not want performed.

224. Dickey's BBQ knew it failed to provide Williams and the other Hourly Employees with *bona fide*, uninterrupted meal breaks.

225. Dickey's BBQ knew Williams and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

226. Dickey's BBQ knew Williams and the other Hourly Employees regularly worked during their unpaid meal breaks.

227. Dickey's BBQ knew Williams and the other Hourly Employees regularly spent their unpaid meal breaks on-duty and performing their regular patient care job duties for Dickey's BBQ's predominant benefit.

228. Dickey's BBQ knew, should have known, or recklessly disregarded whether Williams and the other the Hourly Employees performed compensable work while off-the-clock during their opening and/or closing shifts.

229. Thus Dickey's BBQ knew, should have known, or recklessly disregarded whether it did not pay Williams and the other Hourly Employees for all the hours they performed compensable work.

230. Dickey's BBQ's decision to implement the Tip-Retention Policy, Opening/Closing Shift Policy, Meal Break Policy, Rest Period Policy, and Uniform Expense Policy was neither reasonable, nor was it made in good faith.

231. Dickey's BBQ's failure to pay Williams and the other Hourly Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

232. Likewise, Dickey's BBQ's decision to withhold earned wages from Williams and the other Hourly Employees was neither reasonable, nor was it made in good faith.

233. Likewise, Dickey's BBQ's decision to retain tip/gratuity monies was neither reasonable, nor was it made in good faith.

234. Dickey's BBQ knowingly, willfully, and/or in reckless disregard carried out its illegal Tip-Retention Policies, Opening/Closing Shift Policies, Meal Break Policies, Rest Period Policies, Uniform Expense Policies that deprived Williams and the other Hourly Employees of earned tips, wages for all hours worked, and premium overtime wages for all hours worked in violation of the FLSA, California Labor Code, and applicable IWC Wage Order(s).

235. Dickey's BBQ knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and California wage laws.

## Count I
## Failure to Pay Overtime Wages Under the FLSA
## (FLSA Collective)

236. Williams incorporates all other paragraphs by reference.

237. Williams brings her FLSA claims on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

238. Dickey's BBQ violated, and is violating, the FLSA by employing non-exempt employees (Williams and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock" at the beginning and end of their shifts.

239. Dickey's BBQ also violated, and is violating, the FLSA by retaining tip/gratuity monies that its customers leave for Williams and the other FLSA Collective Members.

240. Dickey's BBQ's unlawful conduct harmed Williams and the other FLSA Collective Members by depriving them of the tips/gratuities and/or overtime wages they are owed.

241. Accordingly, Dickey's BBQ owes Williams and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

242. Dickey's BBQ also owes Williams and the other FLSA Collective Members the difference between the tips/gratuities that its customers left for these non-exempt employees and the actual amount of tips/gratuity payments Dickey's BBQ remitted to those workers.

243. Because Dickey's BBQ knew, or showed reckless disregard for whether, its policies violated the FLSA, Dickey's BBQ owes these wages for at least the past 3 years.

244. Dickey's BBQ is also liable to Williams and the other FLSA Collective Members for an additional amount equal to all unpaid wages and compensatory damages as liquidated damages.

245. Finally, Williams and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## Count II
**Failure to Pay for All Hours Worked Pursuant to Cal. Lab. Code § 204**
**(Rule 23 Class Action)**

246. Williams incorporates all other paragraphs by reference.

247. Williams brings her California wage-and-hour claims on behalf of herself and the other California Class Members pursuant to Fed. R. Civ. P. 23.

248. At all relevant times, Dickey's BBQ was subject to the California Labor Code and applicable IWC Wage Order(s) because each of the defendants were (and are) considered

"employers" and/or "joint employers" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

249. Each of the defendants here is considered an "employer" under IWC Wage Order 9-2001(2)(G) because each of the defendants, directly or indirectly, or through an agent or any other person, exercises control over the wages, hours, or working conditions of any person.

250. At all relevant times, Dickey's BBQ employed Williams and the other California Class Members as its covered "employees" within the meaning prescribed by the California Labor Code.

251. California Labor Code § 204 provides in relevant part that "all wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular payday."

252. California Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

253. California Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

254. California Labor Code § 1198 makes it unlawful for employers, like Dickey's BBQ, to employ employees, like Williams and the California Class Members, under conditions that violate the IWC Wage Orders.

255. IWC Wage Order 9-2001 (applicable to the restaurant industry), subsection (2)(H), defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

256. Dickey's BBQ willfully engaged in and continues to engage in a policy and practice of not compensating Williams and the California Class Members for all hours worked or spent in Dickey's BBQ's control.

257. Dickey's BBQ requires Williams and the other California Class Members to perform compensable work "off the clock," including during their pre-shift and post-shift work time.

258. In other words, Williams and the other California Class Members are forced to perform work for Dickey's BBQ's benefit without compensation during their "off the clock" pre-shift and post-shift work time.

259. Dickey's BBQ knowingly and willfully refuses to perform its obligations to provide Williams and the other California Class Members with compensation for all time worked.

260. Dickey's BBQ's unlawful conduct harmed Williams and the other California Class Members by depriving them of their wages for all hours worked, which they are owed under California law.

261. Despite having knowledge or the ready ability to gather knowledge of the precise number of hours worked using basic diligence, Dickey's BBQ regularly fails to compensate Williams and the other California Class Members for all hours worked.

262. As such, Dickey's BBQ committed, and continues to commit, the acts alleged

herein knowingly and willfully, and in conscious disregard of Williams's and the other California Class Members' rights.

263. Accordingly, Williams and the other California Class Members are thus entitled to recover nominal, actual, liquidated, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

## COUNT III
**Failure to Pay Overtime & Double Time Pursuant to Cal. Lab. Code § 510**
**(Rule 23 Class Action)**

264. Williams incorporates all other paragraphs by reference.

265. Williams brings her overtime and double time claims under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to FED. R. CIV. P. 23.

266. At all relevant times, Dickey's BBQ was subject to the Labor Code and applicable Wage Order(s) because Dickey's BBQ was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

267. At all relevant times, Dickey's BBQ employed Williams and the other California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

268. Williams and the other California Class Members are entitled to overtime and double-time pay under the Labor Code and applicable Wage Orders.

269. Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one

> day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

270. IWC Wage Order 17-2001(4) states that employees:

> . . . shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

271. Labor Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

272. Labor Code § 1198 makes it unlawful for employers, like Dickey's BBQ, to employ employees, including Williams and the other California Class Members, under conditions that violate the Wage Order.

273. Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, Dickey's BBQ did not pay Williams and the other California Class Members overtime wages—at the required rate, based on all remuneration—for all overtime hours worked, including those worked "off the clock."

274. Dickey's BBQ's unlawful conduct harmed Williams and the other California Class

Members by depriving them of the overtime wages they are owed under California law.

275. Accordingly, Dickey's BBQ owes Williams and the other California Class Members the unpaid balance of the full amount of overtime wages owed and interest at the highest applicable rates.

276. Finally, Dickey's BBQ is also liable to Williams and the other California Class Members for their reasonable attorneys' fees and costs incurred in this action.

## COUNT IV
**Unlawful Diversion or Withholding of Tips/Gratuities**
**Pursuant to Cal. Lab. Code § 351**
**(Rule 23 Class Action)**

277. Williams incorporates all other paragraphs by reference.

278. Williams brings her diverted/withheld tips claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to FED. R. CIV. P. 23.

279. At all relevant times, Dickey's BBQ was, and is, subject to the California Labor Code and applicable IWC Wage Order(s) because Dickey's BBQ is considered an "employer" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

280. At all relevant times, Dickey's BBQ employed Williams and the other California Class Members as its covered "employees" within the meaning prescribed by the California Labor Code and applicable IWC Wage Order(s).

281. Dickey's BBQ is considered Williams's and the other California Class Members' employer or joint employers as contemplated by California Labor Code §§ 558 and/or 558.1.

282. At all times herein mentioned, California Labor Code § 351 was in full force and effect and was binding on Dickey's BBQ.

283. Labor Code § 351 requires employers to treat any gratuity provided by a patron for an employee as the sole property of that employee, to refrain from collecting, taking, or receiving any part of such gratuity or deducting it from wages, and to remit any credit-card gratuity to the employee no later than the next regular payday after it is received.

284. During the relevant time period, Dickey's BBQ retained some, if not all, of the tips/gratuities which customers left for Williams and the California Class Members when such customers pay using their credit/debit cards.

285. These policies and practices diverted substantial portions of Williams's and the other California Class Members' tips/gratuities away from them and resulted in a failure to pay all tips and wages due on time, causing Williams and the other California Class Members to lose significant earnings.

286. Dickey's BBQ's failure to timely pay wages was knowing, willful, and deliberate.

287. As a direct and proximate result of Dickey's BBQ's unlawful conduct, Williams and the other Hourly Employees have suffered damages in the form of unpaid and diverted tips/gratuities in an amount to be proven at trial.

288. As a direct and proximate result of Dickey's BBQ's unlawful conduct, Williams and the other Hourly Employees have suffered and continues to suffer substantial damages, in an amount to be proven at trial

## Count V
**Failure to Authorize, Permit, and/or Make Available Rest Periods**
**Pursuant to Cal. Lab. Code §§ 226.7 and 512**
**(Rule 23 Class Action)**

289. Williams incorporates all other paragraphs by reference.

290. Williams brings her meal and rest period claim under the California Labor Code and

IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to FED. R. CIV. P. 23.

291. At all relevant times, Dickey's BBQ was subject to the California Labor Code and applicable Wage Orders.

292. At all relevant times, Dickey's BBQ was Williams's and each California Class Member's "employer" within the meaning prescribed in the California Labor Code.

293. At all relevant times, Williams and each California Class Member was Dickey's BBQ's "employee" within the meaning prescribed in the California Labor Code.

294. At all relevant times, Williams and the other California Class Members were entitled to compliant, *bona fide* meal and rest periods under the California Labor Code and applicable IWC Wage Order(s).

295. Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Dickey's BBQ, to authorize and permit meal and rest periods to their employees, including Williams and the other California Class Members.

296. Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Dickey's BBQ, to provide employees, including Williams and the other California Class Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

297. Similarly, Section 226.7 of the California Labor Code and the applicable Wage Orders, also requires employers, like Dickey's BBQ, to authorize and permit employees, including Williams and the other California Class Members, to take 10 minutes of rest time per 4 hours (or

major fraction thereof) of work, and to pay employees their full wages during those rest periods.

298. Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

299. Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like Dickey's BBQ, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate—based on all remuneration—for each day that the meal and/or rest period was not authorized or permitted.

300. At all relevant times, Dickey's BBQ routinely failed to make meal periods available to Williams and the other California Class Members.

301. Despite long days regularly lasting in excess of 8 hours, Williams and the other California Class Members are often unable to take a meal period, prevented from timely taking a meal period, are otherwise subject to interruption during their meal periods, and are frequently interrupted during their attempted meal periods.

302. Williams and the other California Class Members are not paid one hour of premium pay for each of their missed meal breaks as required by California law.

303. Similar to meal periods, at all relevant times, Dickey's BBQ regularly fails to make rest periods available to Williams and the other California Class Members.

304. When available, if ever, Williams's and the other California Class Members' rest periods were often not compliant, but rather, were generally untimely, short, and/or skipped entirely.

305. Williams and the other California Class Members do not receive premium pay for each of their missed rest periods as required by California law.

306. Dickey's BBQ's unlawful conduct harmed Williams and the other California Class Members by depriving them of compliant meal and rest periods, as well as premium pay.

307. Dickey's BBQ knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide Williams and the other California Class Members compliant meal and rest periods and required premium pay for missed meal and rest periods.

308. Accordingly, Williams and the other California Class Members are entitled to compensation for Dickey's BBQ's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

## COUNT VI
## Failure to Reimburse Necessary Business Expenditures Pursuant to Cal. Lab. Code § 2802
## (Rule 23 Class Action)

309. Williams incorporates all other paragraphs by reference.

310. Williams brings her expense reimbursement claims under the California Labor Code and applicable IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to FED. R. CIV. P. 23.

311. At all relevant times, Dickey's BBQ was, and is, subject to the California Labor Code and applicable IWC Wage Order(s) because Dickey's BBQ is considered an "employer" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

312. At all relevant times, Dickey's BBQ employed Williams and the other California Class Members as their covered "employees" within the meaning prescribed by the California Labor Code and applicable IWC Wage Order(s).

313. Dickey's BBQ is considered Williams's and the other California Class Members' employer or joint employers as contemplated by Labor Code §§ 558 and/or 558.1.

314. Dickey's BBQ does not reimburse Williams and the other California Class Members for all necessary business expenditures.

315. Labor Code § 2802 provides, in relevant part.

> An employer shall indemnify his or her employee for all necessary business expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

316. Dickey's BBQ sets mandatory attire/clothing rules which Williams and the other California Class Members are required to follow, including instructions as to the required uniform these employees should wear to work at Dickey's BBQ's restaurants.

317. Dickey's BBQ regularly requires Williams and the other California Class Members to pay out-of-pocket for their work uniforms.

318. Dickey's BBQ is and was aware that Williams and the other California Class Members incur these business expenses and yet does not reimburse them.

319. Dickey's BBQ is liable to Williams and the other California Class Members for the unreimbursed expenses and civil penalties, with interest thereon.

320. Williams and the other California Class Members are further entitled to an award of attorneys' fees and costs.

## COUNT VII
## Failure to Provide Accurate Wage Statements Pursuant to Cal. Lab. Code § 226
## (Rule 23 Class Action)

321. Williams incorporates all other paragraphs by reference.

322. Williams brings her wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members pursuant to FED. R. CIV. P. 23.

323. At all relevant times, Dickey's BBQ was subject to the Labor Code and applicable Wage Order(s) because Dickey's BBQ was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

324. At all relevant times, Dickey's BBQ employed Williams and the other California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

325. Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the

> employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

326. The applicable Wage Order(s) establish similar wage statement requirements.

327. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

328. As a result of its aforementioned illegal practices, Dickey's BBQ does not provide timely, accurate itemized wage statements to Williams and the other California Class Members, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

329. Specifically, the wage statements Dickey's BBQ provides Williams and the other California Class Members do not accurately reflect their actual hours worked, their actual gross wages earned, their actual overtime wages earned, their actual double time wages earned, their premium pay earned, or their actual net wages earned.

330. Dickey's BBQ's unlawful conduct harmed Williams and the other California Class Members by depriving them of the accurate wages statements they are owed under California law.

331. Williams and the other California Class Members have been injured and/or harmed by Dickey's BBQ's wage statement violations because Dickey's BBQ's conduct in providing inaccurate wage statements prevented Williams and California Class Members from knowing

whether, and to what extent, they had been underpaid by Dickey's BBQ.

332. Upon information and belief, Williams and California Class Members have lost out on the ability to recover unpaid wages and other compensatory damages, at least in part, due to relying on the inaccurate wage statements provided by Dickey's BBQ and wrongly believing they were being paid fully, thereby failing to take corrective action against Dickey's BBQ at an earlier time and losing out on a portion of their unpaid wages due and owing as a result of their applicable limitations period running

333. Accordingly, Dickey's BBQ is liable to Williams and the other California Class Members for the amounts described above, plus interest.

334. Finally, Dickey's BBQ is also liable to Williams and the other California Class Members for their reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

## COUNT VIII
**Waiting Time Penalties Pursuant to Cal. Lab. Code §§ 201-203**
**(Rule 23 Class Action)**

335. Williams incorporates all other paragraphs by reference.

336. Williams brings her waiting time penalties claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other California Class Members that have left their employment with Dickey's BBQ pursuant to FED. R. CIV. P. 23.

337. At all relevant times, Dickey's BBQ was subject to the Labor Code and applicable Wage Order(s) because Dickey's BBQ was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

338. At all relevant times, Dickey's BBQ employed Williams and the other California

Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

339. Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

340. Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

341. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

342. Williams and some of the California Class Members have left their employment with Dickey's BBQ, at which time Dickey's BBQ owed them unpaid wages.

343. These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, double time pay, and premium pay Dickey's BBQ owes Williams and the other California Class Members.

344. Dickey's BBQ willfully refused and continues to refuse to pay Williams and the other California Class Members all wages due and owing to them, in the form of earned wages, overtime pay, and premium pay, upon the end of their employment as a result of Dickey's BBQ's illegal policies.

345. Dickey's BBQ's unlawful conduct Williams and the other California Class

Members by depriving them of the earnings and interest they are owed under California law.

346. Accordingly, Dickey's BBQ is liable to Williams and the other California Class Members for all penalties owing pursuant to Labor Code §§ 201-203.

347. Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

348. Therefore, Williams and the other California Class Members are entitled to penalties pursuant to Labor Code § 203, plus interest.

## COUNT IX
**Violation of California's UCL**
**Pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(Rule 23 Class Action)**

349. Williams incorporates all other paragraphs by reference.

350. Williams brings her UCL claim as a class action on behalf of herself and the other California Class Members pursuant to FED. R. CIV. P. 23.

351. California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

352. Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

353. Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

354. Beginning at an exact date unknown to Williams, but at least during the 4 years prior

to the filing of this Complaint, Dickey's BBQ committed acts of unfair competition as defined by the UCL, engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

a. Violations of Labor Code §§ 201-203 pertaining to failure to pay all wages upon separation of employment;

b. Violations of Labor Code § 204 pertaining to failure to pay all wages owed;

c. Violations of California Labor Code § 351 pertaining to failure to remit all tips/gratuities;

d. Violations of Labor Code § 510 and IWC Wage Order(s) pertaining to overtime wages;

e. Violations of Labor Code §§ 226.7 and 512, as well as IWC Wage Order(s), pertaining to meal and rest periods; and

f. Violations of Labor Code § 226 regarding accurate, timely itemized wage statements.

355. Dickey's BBQ's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq.*

356. Dickey's BBQ's acts and practices described above constitute unfair, unlawful, and fraudulent business practices and unfair competition within the meaning of Business and Professions Code §§ 17200, *et seq.*

357. Among other things, Dickey's BBQ's acts and practices have taken from Williams

and the other California Class Members wages rightfully earned from them, while enabling Dickey's BBQ to gain an unfair competitive advantage over law-abiding employers and competitors.

358. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

359. Injunctive relief is necessary and appropriate to prevent Dickey's BBQ from repeating the unlawful, unfair, and fraudulent business acts and practices alleged in this Complaint.

360. Dickey's BBQ's unlawful conduct harmed Williams and the other California Class Members by depriving them of money and property, in the form of unpaid wages which are due and payable to them.

361. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

362. Williams and the other California Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

363. Williams's success in this action will enforce important rights affecting the public interest and, in that regard, Williams sues on behalf of himself as well as the other similarly situated California Class Members.

364. Accordingly, Williams and the other California Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

365. Williams takes it upon himself to enforce these laws and lawful claims. There is a financial burden involved in pursuing this action, and the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Williams by forcing him to pay attorneys' fees from the recovery in this action.

366. Thus, Attorneys' fees are appropriately awarded to Williams pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## Jury Demand

367. Williams demands a trial by jury on all Counts.

## Relief Sought

WHEREFORE, Williams, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order certifying a class action pursuant to Fed. R. Civ. P. 23;

c. An Order appointing Williams and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Dickey's BBQ liable to Williams and the other FLSA Collective Members for all unremitted tips/gratuities owed and/or unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their compensatory damages;

e. An Order finding Dickey's BBQ liable to Williams and the other California Class Members for their unpaid wages, overtime wages, tips/gratuities owed, liquidated damages, statutory damages, and any other penalties owed under the California Labor Code, the applicable IWC Wage Order(s), and the UCL;

f. A Declaratory Judgment that Dickey's BBQ violated the UCL as a result of the aforementioned violations of the California Labor Code and applicable IWC Wage Order(s);

g. Judgment awarding Williams and the other Hourly Employees all unpaid wages, overtime wages, tips/gratuities owed, liquidated damages, statutory damages, and any other penalties available under the FLSA, California Labor Code, the applicable IWC Wage Order(s), and/or the UCL;

h. For a declaratory judgment that Dickey's BBQ violates California Business and Professions Code §§ 17200 *et seq.* as a result of the aforementioned violations of law;

i. For preliminary, permanent, and mandatory injunctive relief prohibiting Dickey's BBQ, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

j. For an equitable accounting to identify, locate, and restore to all current and former employees the wages and other compensatory damages they are due, with interest thereon;

k. An Order awarding attorneys' fees, costs, and expenses;

l. Pre- and post-judgment interest at the highest applicable rates; and

m. Such other and further relief as may be necessary and appropriate.

Dated: September 4, 2025.

Respectfully submitted,

*/s/ William M. Hogg*

**William M. Hogg**
Texas State Bar No. 24087733
California State Bar No. 338196
**Joshua I. White***
California State Bar No. 278166
**Brendan J. Burton***
California State Bar No. 323495
LAUREL EMPLOYMENT LAW APC
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel: (323) 551-9221
Fax: (310) 564-4093
william@laurelemploymentlaw.com
josh@laurelemploymentlaw.com
brendan@laurelemploymentlaw.com

* - To apply for admission *pro hac vice*

*Counsel for Williams & the Hourly Employees*